UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
DONALD G. GLASCOFF, JR., et al.

                        Plaintiffs,          <u>MEMORANDUM AND ORDER</u>
          v.                                 13 Civ. 1013 (DAB)

ONEBEACON MIDWEST INSURANCE CO. and
ONEBEACON AMERICA INSURANCE CO.

                        Defendants.
---------------------------------------X
DEBORAH A. BATTS, United States District Judge:


     This matter is now before the Court on Parties' cross-Motions
for Judgment on the Pleadings pursuant to Rule 12(c) of the
Federal Rules of Civil Procedure ("Rule 12(c)").  For reasons that
follow, Plaintiffs' Motion is DENIED, Defendants' Motion is
GRANTED, and the Complaint is DISMISSED in its entirety.


I.   BACKGROUND
     The following undisputed facts are drawn from the Complaint
and the documents incorporated therein.


     A.   Park Avenue Bank and Plaintiffs' Insurance Policy
     Park Avenue Bank ("PAB") was a small business bank that
provided commercial and real estate loans.  (Compl. ¶¶ 19-20.)
Plaintiffs are former members of PAB's board of directors.  (<u>Id.</u>
¶¶ 9-14.) Charles Antonucci ("Antonucci") served as PAB's

president, chief executive officer, and as one of its directors.
(<u>Id.</u> ¶ 21.)

PAB, through its parent company Park Avenue Bancorp, Inc.,
purchased professional liability insurance (the "Policy") for its
directors from Defendant OneBeacon Midwest Insurance Company
("OneBeacon").[1]  (<u>Id.</u> ¶ 22.) The Policy's initial coverage term
was from September 9, 2008 to September 8, 2009, and it was
extended to November 9, 2010.  (<u>Id.</u> ¶¶ 23-25; <u>Id.</u> Ex. A; Curley
Decl. Ex. D.) The Policy provides that OneBeacon will pay, "on
behalf of the Insured Persons, Loss for which . . . the Insured
Persons are legally obligated to pay by reason of Claims made
during the Policy Period or the Extended Reporting Period, if
elected, against the Insured Persons for Wrongful Acts." (Policy
§ I.A.) Plaintiffs, as PAB's former directors, are Insured
Persons.  (<u>Id.</u> §§ III.17, III.18.)

A Wrongful Act is defined, <u>inter alia</u>, as "any actual or
alleged act, error, omission, misstatement, misleading statement,

---

[1] **PAB also purchased a financial institution bond (the
"Bond"), which was issued by Defendant OneBeacon America
Insurance Company ("OAI").  Although Plaintiffs brought this suit
seeking declaratory judgment and breach of contract regarding the
Bond, they fail to plead any facts pertaining to OAI's alleged
breach of the Bond, nor does the Complaint make any reference to
any of the Bond's provisions.  Plaintiffs, moreover, consent to
the dismissal of OAI, explaining that the instant suit does not
concern the Bond.  (Pls.' Opp'n 1 n.2.) Accordingly, Defendants'
Motion is GRANTED with prejudice with respect to OAI.**

neglect or breach of duty by . . . any Insured Person in the
discharge of their duties while acting in the capacity as such."
(Id. § III.41(A).) Interrelated Wrongful Acts are "Wrongful Acts
which have as a common nexus any fact, circumstance, situation,
event, transaction or series of related facts, circumstances,
situations, events or transactions."  (Id. § III.19.) The Policy
provides,

> All Claims based upon or arising out of the same
> Wrongful Act or Interrelated Wrongful Acts committed by
> one or more Insureds shall be considered a single Claim
> . . . . Each such single Claim shall be deemed to be
> first made on the date the earliest of such Claims was
> first made, regardless of whether such date is before
> or during the Policy Period.

(Id. § V.C.) Thus, as Parties agree, even if a Claim is brought
after the termination of the Policy's Extended Reporting Period,
if that Claim is an Interrelated Wrongful Act with another Claim
filed during the Policy Period, OneBeacon is obligated to provide
insurance coverage for both Claims.


    B.   PAB's Failure and the Two Claims at Issue

    On March 12, 2010, the New York State Banking Department
closed PAB and appointed the Federal Deposit Insurance Corp.
("FDIC") as PAB's receiver.  (Compl. ¶ 32.) Three days later,
Antonucci was arrested on charges of attempting to defraud the
Troubled Asset Relief Program and for self-dealing with PAB

funds, which included several "round-trip" transactions that he claimed were personal investments into PAB.  (Id. ¶¶ 33-34.)

After PAB's closure, Plaintiffs each received demand letters, dated September 1, 2010, from the FDIC (the "FDIC Claim").  (Id. ¶ 35.) The FDIC asserted claims against Plaintiffs for "breach of duty [including but not limited to the fiduciary duties of due care and loyalty), negligence, and gross negligence in connection with your role in the failure of the Bank."  (Id. Ex. B.) The letters explained, "these claims generally arise from the failure [of Plaintiffs] to supervise, manage, conduct and direct the business and affairs of the Bank to ensure compliance with the law and all regulatory authorities."  (Id.) The FDIC estimates "its total loss in connection with the failure of PAB is approximately $50.7 million," with the loss resulting "from breaches of duty, neglect, errors, misstatements, misleading statements, omissions or acts engaged in or permitted by" Plaintiffs.  (Id.)

The FDIC Claim primarily focused on Plaintiffs' deficient policies, internal controls, and practices, which ultimately lead to PAB's failure, such as having inadequate policies to approve and monitor loans, failing to "establish adequate collection procedures," and failing to "properly oversee employee compensation."  (Id.) However, the FDIC also alleged that

Plaintiffs "failed to act on allegations of improper conduct made against former President and CEO of PAB, Charles Antonucci, ultimately causing significant financial harm to the Bank." (<u>Id.</u>)

Plaintiffs notified OneBeacon of the FDIC Claim in a letter, dated October 5, 2010.  (Compl. ¶ 36; <u>id.</u> Ex. C.) OneBeacon responded, explaining that it accepted the "FDIC demand letters as Claims under the Policy" and would provide insurance coverage. (<u>Id.</u> ¶ 36; <u>id.</u> Ex. D.) On February 28, 2012, after the expiration of the Policy Period, Bruce Kingsley filed a lawsuit against Plaintiffs (the "Kingsley Claim").  (<u>Id.</u> ¶¶ 37, 44.) In a letter dated March 9, 2012, Plaintiffs requested that OneBeacon provide coverage for the Kingsley Claim, asserting that the FDIC Claim and the Kingsley Claim constituted Interrelated Wrongful Acts. (<u>Id.</u> ¶¶ 45-46; <u>id.</u> Ex. F.) In a letter, dated August 16, 2012, OneBeacon declined to cover the Kingsley Claim because it was filed after the termination of the Policy and because OneBeacon believed the two Claims were not Interrelated Wrongful Acts. (<u>Id.</u> ¶ 47; <u>id.</u> Ex. G.) Plaintiffs then filed this diversity suit, seeking a declaratory judgment that the Kingsley Claim and FDIC Claim were Interrelated Wrongful Acts and claiming that OneBeacon breached the Policy when it refused to provide coverage for the Kingsley Claim.  (<u>Id.</u> ¶¶ 48-62.)

The Kingsley Claim alleges Plaintiffs are liable, based on control person and indirect liability pursuant to Arizona securities law, for Antonucci's actions in inducing the Kingsley plaintiffs to invest money with two PAB customers, Preferred United of Oxygen Investment Partners LLC ("Oxygen") and Professional Employer Organization ("PEO").  (Compl. Ex. E ("Kingsley Claim").)  The investments, however, were actually used to fund Antonucci's round-trip transactions.[2]  (Kingsley Claim ¶¶ 15-16.)

Antonucci, the Kingsley Claim contends, made materially false statements, misrepresentations, and omissions, which induced the Kingsley plaintiffs' investment in Oxygen and PEO. (Id. ¶ 23.) In particular, Antonucci traveled to Arizona for a presentation about the status of the Oxygen and PEO investments. (Id. ¶¶ 24, 29-31.) Antonucci never disagreed with the alleged misstatements made during the presentation but instead "indicated that PAB was pleased to participate" in PEO's investment practices, which made Kingsley believe PEO's structure was sound. (Id. ¶¶ 39-40.) Antonucci later spoke with Bruce Kingsley, falsely attesting that "these guys are doing very well."  (Id. ¶¶

---

[2] In addition to naming Antonucci as a defendant in the Kingsley Claim, the Kingsley plaintiffs filed a separate lawsuit against Antonucci.  (Id. ¶¶ 17-18.)

41-4.) Before the Kingsley plaintiffs invested, Antonucci
produced letters of credit, purportedly guaranteeing the security
of the investments.  (<u>Id.</u> ¶¶ 49-50.) Bruce Kingsley and Antonucci
also met at one of PAB's offices where Antonucci misleadingly
told him, "These guys are making an awful lot of money."  (<u>Id.</u> ¶¶
51-59.) Ultimately, the Kingsley plaintiffs invested in Oxygen
and PEO.  (<u>Id.</u> ¶ 71.)

     As members of PAB's board of directors, the Kingsley Claim
alleges that Plaintiffs are liable for their "lax oversight" of
Antonucci and for PAB's lack of "sound corporate governance."
(<u>Id.</u> ¶¶ 7, 20, 23.) The Kingsley Claim continues, "[Plaintiffs]
had the legal power . . . to directly or indirectly control
Antonucci's actions and conduct as alleged herein."  (<u>Id.</u> ¶¶ 83-
84.) Additionally, it claims that Plaintiffs "did not act in good
faith with respect to their control or lack of control of
Antonucci . . . . [and] did not take reasonable steps to maintain
and enforce a reasonable and proper ongoing system of appropriate
supervision and internal controls."  (Id. ¶¶ 84-85.)


II.  DISCUSSION

     A.   Legal Standard for Judgment on the Pleadings

     Faced with cross-motions pursuant to Rule 12(c), "[j]udgment
on the pleadings is appropriate where material facts are

undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988); Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP, 277 F. Supp. 2d 245, 250 (S.D.N.Y. 2003). Accordingly, to grant a Rule 12(c) motion, a movant must establish "'that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law.'" Mack v. Comm'r of Soc. Sec., No. 12 Civ. 186, 2013 WL 5425730, at *6 (S.D.N.Y. Sept. 27, 2013) (quoting Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990)).

In deciding a motion to dismiss pursuant to Rule 12(c), a court applies the familiar standard applicable to a Rule 12(b)(6) motion. Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). For a complaint to survive a Rule 12 motion, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> [W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility

8

of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotation marks omitted).  "In keeping with these principles," the Supreme Court has stated,

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they do no more than draw conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 664.  The Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n. 1 (2002); Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 679, which, like the complaint's "labels and conclusions," are disregarded.  Twombly, 550 U.S. at 555.  Nor should a court "accept [as] true legal conclusions couched as a factual

allegation." Id.

On a Rule 12(c) motion, a court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). A court may also review any document incorporated by reference in the pleadings or integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

B.   Insurance Contract Interpretation Under New York Law

Under New York law, "[i]n an action based on an insurance claim, the insured has the burden of showing that a valid insurance policy was in full force and effect."[3] Moneta Dev. Corp. v. Generali Ins. Co. of Trieste & Venice, 622 N.Y.2d 930, 930 (1st Dep't 1995); Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y.2d 208, 218 (2002). Although an "insurer generally bears the burden of proving that the claim falls within the scope of an exclusion," Village of Sylvan Beach

---

[3] In their memoranda of law, Parties assume New York law applies. Accordingly, this court shall apply New York law. See Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."); Pali v. Precise Imports Corp. No. 99 Civ. 1624, 1999 WL 681384, at *1 n. 1 (S.D.N.Y. Aug. 31, 1999).

v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995), the issue here is not whether an exclusion applies but rather whether OneBeacon must provide insurance coverage for the Kingsley Claim even though it was filed after the Policy's expiration.

In interpreting insurance contracts, a court "is 'to give effect to the intent of the parties as expressed in the clear language of the contract.'" Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002) (citation omitted). Under New York law, "the best evidence of what parties to a written agreement intend is what they say in their writing. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002) (citations and quotations omitted); Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006). "Whether a contract is ambiguous, however, is a 'threshold question of law to be determined by the court.'" Parks Real Estate, 472 F.3d at 42. "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (citation omitted).

C.   Analysis

Parties agree and this Court finds that the Policy's relevant provisions—Claim, Wrongful Act, and Interrelated Wrongful Act—are unambiguous.  See Quanta Lines Ins. Co. v. Investors Capital Corp., No. 06 Civ. 4626, 2009 WL 4884096, at *12 (S.D.N.Y. Dec. 17, 2009) (finding similar provisions unambiguous); see also Zahler v. Twin City Fire Ins. Co., No. 04 Civ. 10299, 2006 WL 846352, at *5 (S.D.N.Y. Mar. 31, 2009) (same).  Additionally, Parties agree and this Court finds that, pursuant to the Policy's terms, the FDIC Claim and the Kingsley Claim constitute Claims and Wrongful Acts.  Although the FDIC Claim was made during the Policy's Extended Reporting Period, the Kingsley Claim was filed after the Policy's expiration.  Thus, only if the two Claims are Interrelated Wrongful Acts, would the Kingsley Claim be covered by the Policy, thereby triggering OneBeacon's obligation to provide insurance coverage for it. Whether the two Claims are Interrelated Wrongful Acts is the only dispute between Parties.

In interpreting policies with substantially identical definitions of Interrelated Wrongful Acts, courts have explained, "[t]o establish that a prior Claim is interrelated with a subsequent Claim, the Claims must share a 'sufficient factual nexus.'"  Quanta Lines, 2009 WL 4884096, at *14 (citation

omitted); <u>Seneca Ins. Co. v. Kemper Ins. Co.</u>, No. 02 Civ. 10088, 2004 WL 1145830, at *8-9 (S.D.N.Y. May 21, 2004) (holding that two claims shared a sufficient factual nexus), <u>aff'd</u>; <u>Zunenshine v. Exec. Risk Indem., Inc.</u>, No. 97 Civ. 5525, 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998) (same).  "A sufficient factual nexus exists where the Claims 'are neither factually nor legally distinct, but instead arise from common facts' and where the 'logically connected facts and circumstances demonstrate a factual nexus' among the Claims."  <u>Quanta Lines</u>, 2009 WL 4884096, at *14 (quoting <u>Seneca</u>, 2004 WL 1145830, at *9).  To demonstrate a sufficient factual nexus, the claims need not "involve precisely the same parties, legal theories, Wrongful Acts, or requests for relief."  <u>Zunenshine</u>, 1998 WL 483475, at *5 (quotation marks and brackets omitted); <u>see Seneca</u>, 2004 WL 1145830, at *9.

When courts have found a sufficient factual nexus, the two claims had specific overlapping facts.  <u>See</u> <u>Quanta Lines</u>, 2009 WL 4884096, at *14-15 (finding both claims accusing directors of failure to supervise the same representative's sale of the same unregistered securities); <u>Zahler</u>, 2006 WL 846352, at *6 ("A side-by-side review . . . reveals that the facts alleged in the two actions are in many cases identical . . . and by all means closely related."); <u>Seneca</u>, 2004 WL 1145830, at *9 (finding the

13

claims shared "numerous logically connected facts and
circumstances"); <u>Zunenshine</u>, 1998 WL 483475, at *5 (finding a
"strong factual nexus" where both lawsuits alleged "four of the
same six plaintiffs made virtually identical false statements in
reports, press releases, and other public statements" during the
same time period). Here, the factual overlap between the two
Claims is tenuous at best: Plaintiffs allegedly failed to act
properly with respect to Antonucci, whether it be their control
and oversight of him, as alleged in the Kingsley Complaint, or
their failure to investigate allegations of his misconduct, as
alleged by the FDIC.

Plaintiffs assert the FDIC Claim and the Kingsley Claim are
Interrelated Wrongful Acts because both "brought claims against
Plaintiffs for their alleged failure to oversee and manage
Antonucci and PAB in a manner that would have prevented his fraud
and PAB's failure." (Compl. ¶ 45.) The FDIC Claim, however, only
alleges that Plaintiffs "failed to act on allegations of improper
conduct made against" Antonucci. (Compl. Ex. B.) The FDIC made
no additional allegations regarding Plaintiffs' oversight of
Antonucci or their failure to prevent his fraud. In their motion
papers, Plaintiffs make conclusory statements in an attempt to
add facts—including the Kingsley Claim's allegations of
Antonucci's round-trip transaction, letter of credit, and

**14**

misstatements—to the FDIC Claim where the FDIC never made such allegations.  (See Pls.' Mot. J. Pleadings 8; see also Pls.' Opp'n 1-2, 4; Pls.' Reply 1, 3.) Additionally, although the Kingsley Claim outlines Antonucci's numerous misdeeds, it never asserts that Plaintiffs did not act on allegations of Antonucci's misconduct or that their inaction caused PAB's failure.[4]  The Kingsley Claim instead alleges that Plaintiffs failed to oversee adequately or control Antonucci, which enabled him to defraud the Kingsley plaintiffs.

While Plaintiffs are correct in citing to Zahler for the

---

[4] Although Plaintiffs assert the facts in Quanta Lines "are almost exactly analogous," (Opp'n 6), that is not the case.  In Quanta Lines, the court found a sufficient factual nexus between a claim letter accusing the directors of failing to supervise a representative's sale of unregistered securities and arbitration proceedings that accused the directors of failing to supervise that same representative's sale of the same unregistered securities during the same time period.  2009 WL 4884096, at *14-15.  Whereas the court in Quanta Lines was able to compare the similarity of specific factual allegations between the claim letter and arbitration proceedings, see 2009 WL 4884096, at *14-15, Plaintiffs here want the court to infer, without more, that the FDIC's letter inherently included the Kingsley Claim's specific factual allegations of Antonucci's misconduct.  Although this Court must draw all reasonable inferences in Plaintiffs' favor, the Court shall not read the FDIC Claim to include facts not alleged.  See Home Ins. Co. of Ill. v. Spectrum Info. Tech., Inc., 930 F. Supp. 825, 851 (E.D.N.Y. 1996) ("[B]ald allegations of conspiracy are insufficient to enmesh otherwise distinct claims.").  Moreover, the Kingsley Claim's conclusory pleadings regarding PAB's lack of sound corporate governance and lack of a proper oversight system, absent specific factual allegations, does not render the instant action analogous to Quanta Lines.

proposition that claims may have a sufficient factual nexus even
when there are different wronged individuals and different causes
of action, the facts in <u>Zahler</u> are readily distinguishable from
the instant Complaint.  In <u>Zahler</u>, the interrelated claims
alleged the same events, which included misleading statements
contained in the company's press releases and misstatements made
by the CEO, triggered the boundaries of identical class periods.
<u>See</u> <u>Zahler</u>, 2006 WL 846352, at *6.  Here, there is no such
similarity in the wrongful acts that gave rise to the FDIC and
Kingsley Claims.  If painted in broad strokes, the two Claims may
arise out of the same deficient corporate structure or
Plaintiffs' lack of oversight.  Plaintiffs, however, merely plead
in a conclusory manner that the two Claims share common facts and
circumstances, yet, as previously explained, the FDIC Claim
merely references Antonucci's general misconduct whereas the
Kingsley Claim makes specific allegations of his fraud on the
Kingsley plaintiffs.  Plaintiffs' bald allegations that the two
Claims arise out of a common set of circumstances are
insufficient to demonstrate a sufficient factual nexus.  <u>See</u> <u>Home
Ins. Co. of Ill.</u>, 930 F. Supp. at 850 (finding unpersuasive the
"attempt to intertwine the [claims] by relying on naked
allegations in the original complaints that they represent mere
pieces of a larger 'scheme'"); <u>see also</u> <u>Nat'l Union Fire Ins. Co.</u>

of Pittsburgh v. Ambassador Grp., Inc., No. 85 Civ. 2132, 691 F.
Supp. 618, 623 (E.D.N.Y. 1988) (noting, in dicta, that "it is not
readily apparent" that the claims are interrelated even though
"[b]roadly construed, the claims are interrelated to the extent
that they all involve allegations of wrongdoing of one sort or
another and relate, in some way, to the demise of" the company).

     In the apparent awareness that they fail to point to any
specific common fact, event, or circumstance, Plaintiffs argue
that the two Claims are Interrelated Wrongful Acts because "both
feature allegations of similar conduct against
Plaintiffs—failure to oversee Antonucci."  (Pls.' Opp'n 7
(emphasis added).) To support this argument, Plaintiffs point to
Seneca where the court found there were "logically connected
facts and circumstances [that] demonstrate a factual nexus."
Seneca, 2004 WL 1145830, at *9, aff'd 133 F. App'x 770 (2005).
In Seneca, although different parties made allegations of the
insured's wrongdoing, the court found that their claims "arise
from common facts" because both alleged the insured denied
independent applications for horse shows and because both claimed
the same legal theory of liability, injury, and request for
relief.  Id. at *9.  Here, Plaintiffs admit the FDIC and Kingsley
Claims do not share parties, legal theories, or requests for
relief, (Pls.' Opp'n 7), yet they want this Court to find the two

17

Interrelated Wrongful Acts because both Claims ostensibly relate
to Plaintiffs' oversight of Antonucci.  Without more,[5] there
simply is not a sufficient factual nexus between the FDIC Claim
and the Kingsley Claim.  To interpret the two as interrelated
"would be to grant the insured more coverage than he bargained
for and paid for," Zunenshine, 1998 WL 483475, at * 5 (citation
omitted), as it would be hard to envision, given the broad and
generalized allegations in the FDIC Claim, how any subsequent
claim against Plaintiffs would not be deemed an Interrelated
Wrongful Act.  See id. ("[T]he purpose behind 'claims made'
insurance" is "'to limit [the insurer's] liability to a fixed
period of time.'" (citation omitted)); see also Zahler, 2006 WL
846352, at *7 (explaining, in a case determining a second claim
was excluded from coverage because it was an interrelated
wrongful act, if the court held the policy covered the second
claim, "despite the parallel facts alleged," then the insured

_____

[5] Although the court in Home Insurance noted that it would
need more factual development to determine whether two claims
were made within the policy, 930 F. Supp. at 851, here further
factual development could not lead to a finding that the FDIC and
Kingsley Claims were Interrelated Wrongful Acts.  In a letter,
dated May 8, 2013, Plaintiffs requested leave to file a pre-
discovery motion for summary judgment, explaining, "All of those
documents [that are dispositive] were annexed to the complaint in
this action and are available . . . . Thus we believe that no
further discovery is necessary as it will not reveal any
additional documents or information that could be of value in the
Court's determination of this dispute."

18

"would have gotten more than it bargained for in its contract").

Accordingly, this Court finds that, pursuant to the Policy's terms, the FDIC and Kingsley Claims are not Interrelated Wrongful Acts because they do not share a sufficient factual nexus.  Since the two Claims were not related, OneBeacon did not breach the Policy by refusing to provide coverage for the Kingsley Claim.


III.  CONCLUSION

Defendants' Motion for Judgment on the Pleadings is GRANTED, and Plaintiffs' Motion for Judgment on the Pleadings is DENIED. The Complaint is DISMISSED in its entirety and with prejudice. The Clerk of Court is directed to enter judgment for Defendants and to close the docket in this case.


SO ORDERED.

Dated:    New York, New York

          May 8, 2014


          _Deborah A. Batts_
          Deborah A. Batts
          United States District Judge